United States District Court
Southern District of Texas
**ENTERED**
October 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN L. HATCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:18-CV-4146 |
| | § | |
| TURNER M. JONES, | § | |
| LAWRENCE KUYKENDALL, | § | |
| MELIDA RAMIREZ, | § | |
| NATIONWIDE COIN & | § | |
| BULLION RESERVE, INC., | § | |
| | § | |
| Defendants. | § | |

# REPORT AND RECOMMENDATION

Pending before this Court are two motions: (1) Defendant Nationwide Coin & Bullion Reserve, Inc.'s ("NCBR") motion to compel arbitration and stay the proceedings, *see* Motion to Compel Arbitration, ECF No. 16 ("NCBR Mot."); and (2) Plaintiff John L. Hatch's ("Plaintiff" or "Hatch") motion for costs associated with service of the complaint, *see* Motion for Costs, ECF No. 27 ("Hatch Mot.").[1] Based on a review of the record, motions, supporting affidavits, and relevant law, the Court recommends NCBR's motion to compel arbitration be denied and Plaintiff's motion for costs be denied without prejudice.

---

[1] The District Judge to whom this case is assigned referred the motions to this Court for Report and Recommendation. Notice of Referral, ECF No. 28; *see* 28 U.S.C. § 636(b)(1).

1

## I.    FACTUAL OVERVIEW

NCBR is a Texas corporation engaged in the sale of precious metals, including gold and silver, via the phone and internet. Amended Complaint, ECF No. 14 ("Am. Compl.") ¶¶ 14-15; NCBR Mot. ¶¶ 1, 9. Plaintiff, who is a citizen of Oregon, purchased about $200,000[2] in coins from NCBR throughout a series of transactions in early 2018. Am. Compl. ¶¶ 10, 16; NCBR Mot. ¶¶ 2, 9.[3] According to Plaintiff, Defendants misled and enticed him into believing he was making a sound investment and "failed to advise [him] that he was paying substantially more than the fair market price of" the coins. Am. Compl. ¶ 16. Plaintiff asserts that this was part of a scheme in which Defendants fraudulently induce elderly customers into purchasing such coins at a substantially higher price than their worth. *Id.* ¶¶ 16, 21; *see also* Plaintiff's Response to NCBR Mot., ECF No. 23 ("Pl.'s Resp.") ¶ 1.

Plaintiff filed this action against Turner M. Jones ("Jones"), Lawrence Kuykendall ("Kuykendall"), Melida Ramirez ("Ramirez") (collectively "Individual Defendants"), and NCBR (all four collectively "Defendants") alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), common law

---

[2] Plaintiff asserts the purchases totaled $217,776, *see* Am. Compl. ¶ 16, while NCBR provides an invoice spreadsheet listing purchases that total $196,485, *see* Invoices, attached as Ex. 1 to Aff. of Gina Wells ("Wells Aff."), ECF No. 16 at 1.

[3] The Court has diversity jurisdiction as there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; Am. Compl. ¶¶ 10-14, 16.

fraud, negligence, and negligent misrepresentation. *See* Am. Compl., ECF No. 14.

NCBR seeks to compel arbitration based on the Terms and Conditions that appear on the back of the invoice/packing slip that was included in each shipment of coins. Plaintiff disputes that an agreement to arbitrate exists and seeks his costs based on the Individual Defendants' refusal to waive service of process.

## II. NCBR'S MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS

NCBR's motion is based on an arbitration clause contained in the Terms and Conditions of each sales transaction, which appear on the back of each purchase invoice/packing slip. *See* NCBR Mot. ¶ 1; Aff. of Gina Wells, attached as Ex. 1 to NCBR Mot., ECF No. 16 ("Wells Aff.") ¶ 4.[4] The arbitration clause provides as follows:[5]

> **Arbitration:** All claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the State of Texas, County of Harris. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Any decision or award as a result of any such arbitration proceeding shall be in writing and shall provide an explanation for all conclusions of law and fact and shall include the assessment of costs, expenses and reasonable attorneys' fees. Any such arbitration shall be conducted by an arbitrator experienced in precious

---

[4] NCBR seeks to compel Plaintiff to arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the Texas Arbitration Act ("TAA"), Tex. Civ. Prac. & Rem. Code § 171.001 *et seq. See* NCBR Mot. ¶ 6.

[5] NCBR failed to submit a copy of the Terms and Conditions containing the arbitration clause with their motion to compel arbitration; instead, they submitted an affidavit containing quoted language from the arbitration clause. *See* Wells Aff. ¶ 4. Plaintiff attached an illegible copy of the Terms and Conditions with his response to the motion, which he later supplemented with a readable version. *See* Terms and Conditions, attached as Ex. 1-A to Notice of Refiling, ECF No. 29.

3

> metals and shall include a written record of the arbitration hearing. The parties reserve the right to object to any individual who shall be employed by or affiliated with a competing organization or entity. An award of arbitration may be confirmed in a court of competent jurisdiction.

Terms and Conditions, attached as Ex. 1-A to Notice of Refiling, ECF No. 29. Additionally, according to NCBR's Chief Financial Officer, Gina Wells ("Wells"), a member of NCBR's Verification Department contacted Plaintiff before the completion of each transaction and confirmed that he agreed that "'all claims or disputes relating to th[e] sale are subject to binding arbitration in Harris County, Texas.'" Wells Aff. ¶ 6.

Plaintiff does not dispute the content of the arbitration clause, or that the clause was contained on the back of each purchase invoice/packing slip. Instead, Plaintiff contends that he was unaware of the arbitration clause until NCBR filed its motion to compel arbitration. Aff. of John L. Hatch, attached as Ex. 1 to Pl.'s Resp., ECF No. 23 ("Hatch Aff.") ¶ 3. Plaintiff further contends that he did not receive the invoices containing the arbitration clause until the coins were delivered to him, and thus they were not part of the sales contract between the parties. *See* Pl.'s Resp. ¶¶ 2, 11-18. Furthermore, he asserts that no representative of NCBR spoke with him over the phone about arbitration. Hatch Aff. ¶ 4. According to Plaintiff, no agreement to arbitrate ever existed.

4

### A. Did the Parties Enter into an Arbitration Agreement?

In enacting the Federal Arbitration Act ("FAA"), Congress "expressed a strong policy favoring arbitration." *J. S. & H. Const. Co. v. Richmond Cty. Hosp. Auth.*, 473 F.2d 212, 214-15 (5th Cir. 1973). The FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001), *aff'd*, 34 F. App'x 964 (5th Cir. 2002).[6] A party may bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4; *see Matos v. AT&T Corp.*, No. 18-CV-2591, 2019 WL 5191922, at *2 (N.D. Tex. Sept. 9, 2019) ("[O]nce a court finds an agreement to arbitrate between the parties, the court is restricted to enforcing the agreement."), *report and recommendation adopted*, 2019 WL 5191487 (Oct. 15, 2019).

---

[6] Here, the coins were shipped from NCBR, a Texas corporation, to Plaintiff, a citizen of Oregon, using interstate mail. *See* Am. Compl. ¶¶ 10, 14-15; NCBR Mot. ¶¶ 7-10. There is no question that the transactions involved interstate commerce. *See Griffin v. Senior Living Props., LLC*, No. 17-CV-190, 2017 WL 3721989, at *1 n.1 (E.D. Tex. Aug. 29, 2017) ("[C]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA.") (quotations omitted); *Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.*, No. 09-CV-30, 2009 WL 3673823, at *5 (Tex. App. Nov. 5, 2009) ("The FAA . . . requires only that interstate commerce be involved or affected. Interstate commerce is evidenced by . . . transportation of goods across state lines[.]") (citation omitted).

5

Since arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quotations omitted); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").[7]

When a party seeks to compel arbitration, the first question for the court is whether there is a contract between the parties to arbitrate. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) ("When a party seeks to compel arbitration based on a contract, the first, and perhaps most obvious, question for the court is whether there is a contract between the parties at all."). "In conducting this inquiry, the Court distinguishes between 'validity' or 'enforceability' challenges and 'formation or

---

[7] NCBR also relies on the TAA but fails to explain why the state arbitration statute applies. *See* NCBR Mot. ¶¶ 6, 11. FAA rules apply absent clear and unambiguous contractual language to the contrary. *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 791 (5th Cir. 2015) ("[T]he FAA provides the default standard of review, and . . . parties must unambiguously express their agreement to non-FAA standards to obtain [state or common law] review."); *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 17-CV-62, 2017 WL 2120015, at *2 n.1 (E.D. Tex. May 16, 2017) (finding state arbitration law did not apply because parties did not expressly reference it, even though the arbitration clause specified in which state the arbitration would be conducted). Here, there is no reference to the TAA or state law in the purported arbitration clause, nor does the clause specify how the FAA rules would be modified. The Court thus need not analyze the motion under the TAA.

existence' challenges." *Jia v. Nerium Int'l LLC*, No. 17-CV-3057, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018) (quoting *HomeAway*, 890 F.3d at 550). "[W]here the very existence of a contract containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quotations omitted); *accord Clark v. Nordstrom, Inc.*, No. 18-CV-2100, 2019 WL 3428947, at *3 (N.D. Tex. July 30, 2019).

Courts must apply state-law contract principles to determine whether an agreement to arbitrate exists. *Jia*, 2018 WL 4491163, at *3 (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003)); *Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Tex.*, No. 17-CV-2661, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017) ("Courts generally apply 'ordinary state-law principles that govern the formation of contracts[.]'") (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).[8] The formation of a binding contract under Texas law requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quotations omitted); *see also U.S. Money Reserve, Inc. v. Kagan*, No. 18-CV-577, 2019 WL 1313469, at

---

[8] Both parties rely on Texas law. *See, e.g.*, NCBR Mot. ¶¶ 11-18; Pl.'s Resp. ¶¶ 9, 11-16.

*2 (W.D. Tex. Jan. 29, 2019) ("Texas requires an offer, acceptance, and mutual assent to the terms of the agreement in order to form a contract."). Plaintiff argues NCBR has not met its burden to prove there was an agreement to arbitrate. *See* Pl.'s Resp. ¶¶ 11-22.

### 1. Plaintiff disputes that the Terms and Conditions were part of the contract between the parties.

NCBR's argument consists of a conclusory statement that there is "no dispute" that the transactions were subject to Terms and Conditions containing the arbitration clause or that the invoices contained the Terms and Conditions on the reverse side. NCBR Mot. ¶ 14. Plaintiff does not dispute that the Terms and Conditions appear on the back of the invoices, however, he argues he was unaware of any such terms until NCBR filed its motion to compel arbitration and thus never agreed to be bound by them. Hatch Aff. ¶ 3; *see* Pl.'s Resp. ¶¶ 10-18. The Court agrees with Plaintiff that the Terms and Conditions were not part of the parties' original contracts, nor did they serve to modify them.

#### a. The contract was formed before Plaintiff received the invoice.

Under Texas Law, "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." TEX. BUS. & COMM. CODE § 2.206(a)(2). "Additional terms are construed as

*proposals* for addition to the contract." *U.S. Money Reserve, Inc.*, 2019 WL 1313469, at *3 (emphasis added) (citing TEX. BUS. & COMM. CODE § 2.207(b)). In some circumstances, such proposed additional terms may automatically become part of the contract; however, this is only the case in transactions between merchants. *See* TEX. BUS. & COMM. CODE § 2.207(B).[9]

Here, the sales contract was formed upon the promise to ship, or at the latest the shipment of, the coins for each transaction. *See U.S. Money Reserve, Inc.*, 2019 WL 1313469, at *3 (finding the contract was formed when vendor accepted an offer to buy coins and promised to ship or actually shipped them, before purchaser's receipt of additional terms of arbitration clause on invoice/packing slip); *Enpro Sys., Ltd. v. Namasco Corp.*, 382 F. Supp. 2d 874, 879-81 (S.D. Tex. 2005) (finding that a sales contract had been formed upon shipment of the goods—or at the very latest upon receipt of the goods—before plaintiff viewed the purchase invoices that arrived with, and after, the shipment). Plaintiff paid for the sales transactions *before* the invoices were sent with the shipment of coins. Pl.'s Resp. ¶ 2; *see* Invoices, attached as Ex. 1 to Wells Aff., ECF No. 16 at 2, 4, 6-10 (indicating a "paid" date as on or before the invoice date). At that point, each sales contract was fully performed by both sides and could not be modified. Thus, Defendant has failed to produce any evidence that Plaintiff had agreed to arbitrate before the contract was formed.

---

[9] Neither party contends that Plaintiff is a merchant.

### b.  *The Terms and Conditions were proposals.*

Under the evidence presented, the Terms and Conditions are mere proposals for additional terms and NCBR has failed to demonstrated acceptance of the proposed terms. *See, e.g.*, *U.S. Money Reserve, Inc.*, 2019 WL 1313469, at *3. In a case on all fours with this case, the defendant, an elderly woman, offered to buy coins from a coin vendor, and the vendor accepted that offer when it either promised shipment or shipped the coins. *Id.* Accordingly, the court found that the contract was fully formed before the vendor proposed additional terms in the form of the arbitration agreement on the back of the packing slip/invoice. *Id.* The court found that, because the purchaser was not a merchant, the additional terms did not become part of the agreement without her assent; since the vendor presented no evidence that she assented to the additional terms, the court found that she was not bound by the arbitration provision contained on the back of the invoices. *Id.*

### c.  *The Terms and Conditions were not a modification to the existing contract or a new contract.*

The Terms and Conditions also could not serve as a new contract or a modification of the parties' existing contract because either would require a meeting of the minds. *See Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228-29 (Tex. 1986) ("A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration. Whether a contract is modified depends on the parties' intentions[.]") (citations omitted). "The determination of a meeting of the

10

minds . . . is based on the objective standard of what the parties said and did." *Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.*, No. 09-CV-30, 2009 WL 3673823, at *7 (Tex. App. Nov. 5, 2009) (citing *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App. 2002)). An arbitration agreement on the back of an invoice is not enough to show a meeting of the minds for contract formation or modification. *See id.* at *8-9.

### d. *The Terms and Conditions were not part of the parties' course of dealing.*

NCBR's argument that the Terms and Conditions containing the arbitration clause are part of the parties' course of dealing, *see* Wells Aff. ¶ 8, is without merit because such an implied-in-fact contract requires a meeting of the minds. *See U.S. Money Reserve, Inc.*, 2019 WL 1313469, at *3 (finding there was no agreement to arbitrate, despite the fact that invoices for each of several coin purchases over the course of a year contained an arbitration clause on the back); *Stewart & Stevenson*, 2009 WL 3673823, at *10 ("GPB's failure to object to Stewart & Stevenson's unilateral inclusion of an arbitration provision in an invoice reflecting the goods and services provided under an already existing contract does not establish an agreement to arbitrate between Stewart & Stevenson and GPB."); *Enpro Sys.*, 382 F. Supp. 2d at 885-86 ("Texas law requires . . . substantial evidence of parties' shared understanding in order to prove course of dealing. . . . There is nothing in the record suggesting Enpro ever affirmatively accepted or recognized the terms—for example,

11

by tolerating them in a previous dispute—and then continued to purchase steel from Namasco under the same procedures. These facts do not persuade the court that there was, as a matter of law, a common basis of understanding between the parties as to the delivery ticket/invoice terms or that Enpro, through affirmative conduct, impliedly agreed to their imposition.").

### 2. An oral agreement cannot form a contract to arbitrate.

NCBR seems to argue that it made an oral agreement to arbitrate with Plaintiff. Its contention fails for two reasons: it has not submitted sufficient evidence[10] and arbitration agreements must be in writing.

NCBR submitted Wells's affidavit stating that its Verification Department contacted Plaintiff by telephone prior to the completion of each sale and advised him that any disputes regarding the sales were subject to arbitration. *See* Wells Aff. ¶ 6. According to Wells, Plaintiff *must have agreed* to these terms because the transactions would not have otherwise occurred. *Id.* Although Wells claims her affidavit to be based on personal knowledge, *see id.* ¶ 1, she does not claim to have spoken to Plaintiff herself, nor does she explain who from the Verification

---

[10] "The standard for determining the admissibility of evidence provided by a party seeking to compel arbitration is akin to the one applied when deciding a summary judgment motion, including the requirement that evidence in a declaration must comply with the Federal Rules of Evidence and, accordingly, must be based on personal knowledge." *Bow v. Ad Astra Recovery Servs., Inc.*, No. 18-CV-510, 2018 WL 3455510, at *4 (N.D. Tex. July 18, 2018) (quotations and alterations omitted). Courts in the Fifth Circuit apply this standard for admissibility of evidence. *See, e.g.*, *Price v. Santander Consumer USA Inc.*, No. 19-CV-742, 2019 WL 4318883, at *1 (N.D. Tex. Sept. 12, 2019).

Department spoke to Plaintiff. In fact, Wells does not explain how she knew Plaintiff agreed by phone to arbitrate or what she reviewed before making her affidavit—a transcript, a recording, or some other form of documentation. This does not suffice as admissible evidence. *See, e.g.*, *Rocha v. Macy's Retail Holdings, Inc.*, No. 17-CV-73, 2017 WL 4399575, at *3 (W.D. Tex. Oct. 3, 2017) (rejecting affidavit as competent evidence in evaluating a motion to compel arbitration, even though it attested to being based on personal knowledge, because it was "devoid of basic factual support or context").[11]

In any event, the FAA pertains only to written agreements to arbitrate. *See* 9 U.S.C. § 2 ("A *written* provision in . . . a contract evidencing a transaction involving interstate commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.") (emphasis added), § 3 (providing a court must stay proceedings upon finding an issue is "referable to arbitration under an agreement *in writing* for such arbitration") (emphasis added); *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 63 (5th Cir.

---

[11] Even if the affidavit did suffice, Plaintiff has submitted a competing affidavit that creates a question of fact as to whether these oral agreements ever occurred. *See* Hatch Aff. ¶ 4. Under the summary judgment-like standard applied by some courts in the Fifth Circuit, this would defeat the motion to compel arbitration. *See, e.g.*, *Grant v. House of Blues New Orleans Rest. Corp.*, No. 10-CV-3161, 2011 WL 1596207, at *6 (E.D. La. Apr. 27, 2011) ("Defendant argues that the[ ] documents evidence the existence of an arbitration agreement in 1999. However, Grant swears under oath that she has absolutely no memory of signing any of those documents and she questions the authenticity of the signatures on those Exhibits. This fact dispute precludes a finding on the current evidentiary record that Grant entered into an arbitration agreement in July 1999.") (quotations and citations omitted) (alterations omitted).

13

1987) (acknowledging that " courts can only enforce written agreements to arbitrate" under the FAA). Therefore, the Court cannot compel arbitration based on the purported oral agreements.

NCBR has thus failed to prove that an agreement to arbitrate ever existed, and the motion to compel arbitration must be denied. *See Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 454 (N.D. Tex. 2019) (denying motion to compel arbitration because there was insufficient proof establishing the existence of an agreement to arbitrate between the parties).

## III. PLAINTIFF'S MOTION FOR SERVICE COSTS

Plaintiff seeks to recover costs and fees associated with service of the complaint on the Individual Defendants under Federal Rule of Civil Procedure 4(d) based on their failure to waive service. *See* Hatch Mot. ¶ 11. Plaintiff's proof is insufficient to entitle him to recover these costs.

### A. Plaintiff Requested that Defendants Waive Service.

The day before filing the original complaint, Plaintiff's counsel, Raymond Stevens ("Stevens"), emailed Defendants' counsel, Todd Collins ("Collins"), requesting that Defendants waive service. Hatch Mot. ¶ 2; *see also* Email dated Oct. 30, 2018, attached as Ex. 1 to Aff. of Raymond Stevens ("Stevens Aff."), ECF No. 27 ("Waiver Req."). Collins waived service on behalf of NCBR only. Hatch Mot. ¶ 3; *see also* Waiver of Service, ECF No. 3 ("NCBR Waiver"). Stevens purportedly

14

mailed the waiver form to the Individual Defendants and notified Collins of the mailing. *See* Hatch Mot. ¶ 5; Email dated Nov. 21, 2018, attached as Ex. 4 to Stevens Aff., ECF No. 27 ("Nov. Email").

Almost three months later, after the Individual Defendants failed to execute a waiver of service, Plaintiff requested that the Clerk of Court issue summonses. *See* Request for Summons, ECF No. 11. On March 1, 2019, Stevens emailed Collins, notifying him that he would serve the Individual Defendants the following week if they did not execute a waiver and would seek expenses and attorney's fees under Rule 4(d)(2) for refusal to waive service. Hatch Mot. ¶ 8; *see* Email dated Mar. 1, 2019, attached as Ex. 6 to Stevens Aff., ECF No. 27 ("Mar. Email"). Plaintiff served each Individual Defendant, *see* Summonses Returned Executed, ECF Nos. 20-22, and each of them filed an answer, *see* Answers, ECF Nos. 17-19. Collins is the attorney of record for all four Defendants.

Plaintiff now seeks $320 in service charges, $910 in attorney's fees ($350 per hour for 2.6 hours), and $300 in paralegal fees ($125 per hour for 2.4 hours) from the three Individual Defendants. Stevens Aff. ¶ 7. Defendants failed to respond. Under the Court's local rules, failure to respond will be taken as no opposition to the motion. S.D. Tex. Loc. R. 7.4.

### B. Rule 4 Allows Recovery of Costs When Defendants Fail to Waive Service Without Good Cause.

"Rule 4(d) establishes procedures by which parties may request and agree to

15

waive formal service." *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 508 (5th Cir. 2004). "An individual . . . that is subject to service under Rule 4(e) . . . has a duty to avoid unnecessary expenses of serving the summons." FED. R. CIV. P. 4(d)(1). Therefore, under Rule 4(d), a plaintiff may notify a defendant of the lawsuit and request waiver of service. *Id.*[12] If a defendant fails to execute a waiver without good cause, the court must impose on the defendant "expenses later incurred in making service" and "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." FED. R. CIV. P. 4(d)(2). The plaintiff bears "the burden to show entitlement to costs and fees under Rule 4." *Hanna v. LeBlanc*, No. 15-CV-2851, 2017 WL 2198345, at *12 (W.D. La. Mar. 8, 2017) (citing *Flores*, 116 F. App'x at 508), *report and recommendation adopted*, 2017 WL 2198188 (May 18, 2017), *aff'd*, 716 F. App'x 265 (5th Cir. 2017); *accord*

---

[12] Under Rule 4, such a request must:
    **(A)** be in writing and be addressed:
        **(i)** to the individual defendant; or
        **(ii)** for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
    **(B)** name the court where the complaint was filed;
    **(C)** be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;
    **(D)** inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;
    **(E)** state the date when the request is sent;
    **(F)** give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and
    **(G)** be sent by first-class mail or other reliable means.

*Polk Const. Corp. v. Covasa Const., L.L.C.*, No. 12-CV-2970, 2013 WL 6184988, at *2 (E.D. La. Nov. 26, 2013).

The Court must first inquire into whether Plaintiff properly requested a waiver of service from Jones, Kuykendall, and Ramirez under Rule 4(d)(1). *See Suggs v. Cent. Oil of Baton Rouge, LLC*, No. 13-CV-25, 2014 WL 3374719, at *1 (M.D. La. July 9, 2014). A request for waiver of service can be effective even if a plaintiff does not strictly comply with every formalistic requirement of the rule, as long as he substantially complies. *See Hanna*, 2017 WL 2198345, at *12; *Judeh v. La. State Univ. Sys.*, No. 12-CV-1758, 2013 WL 654921, at *3-4 (E.D. La. Feb. 20, 2013). A plaintiff's failure to substantially comply with the rule provides a defendant with good cause for failing to execute a waiver. *See, e.g.*, *Suggs*, 2014 WL 3374719, at *2; *Judeh*, 2013 WL 654921, at *5.

### 1. Plaintiff failed to show service of waiver on Individual Defendants.

Here, the only evidence that Plaintiff requested a waiver of service from the Individual Defendants is an email to Defendants' counsel stating that Stevens had "mailed the waivers to the three principals [of NCBR] and hope[d] they [would] execute and return" them. Nov. Email, ECF No. 27; *see* Hatch Mot. ¶ 5. Plaintiff has failed to provide information on when or where these waivers were sent, what documents were included in the mailing, and whether Defendants actually received the requests. Such information is necessary for a court to award service costs. *See,*

17

*e.g.*, *Hanna*, 2017 WL 2198345, at \*12 (denying costs based on plaintiff's failure to at least attach the complaint to request for waiver); *Suggs*, 2014 WL 3374719, at \*2 (denying motion for service costs for failure to show that request was sent to and received by defendant); *Polk Const. Corp.*, 2013 WL 6184988, at \*3 (denying motion for service costs because plaintiff failed to show that the service waiver was actually delivered to defendant or contained the information required under Rule 4(d)(1)).

Furthermore, the request for waiver must be directed to the Defendants themselves—rather than their attorney—and thus any communication between Stevens and Collins is insufficient for the Court to award service costs. *See* FED. R. CIV. P. 4(d)(1) (requiring the waiver request "be in writing and be addressed . . . to the individual defendant"); *see, e.g.*, *Flores*, 116 F. App'x at 508 (identifying service of waiver request on defendant's counsel as "faulty service" and affirming the district court's denial of service costs); *Gillen v. Chase Home Fin., L.L.C.*, No. 06-CV-598, 2006 WL 8433928, at \*1 (M.D. La. Dec. 27, 2006) (denying service costs when plaintiff served waiver request on counsel instead of defendant or its authorized agent for service of process). Therefore, Plaintiff has not met his burden of proving entitlement to service costs and expenses.

### 2. Plaintiff is not entitled to recover legal fees incurred to effectuate service.

Even if Plaintiff had met his burden, he requests paralegal fees for, in part,

"preparation of citations for service." Stevens Aff. ¶ 5. However, a plaintiff can only recover legal fees associated with making the motion for costs, not those associated with serving the complaint. *See Haynesville Shale Rentals, LLC v. Total Equip. & Serv., Inc.*, No. 12-CV-860, 2012 WL 4867603, at *6 (S.D. Tex. Oct. 12, 2012) (collecting cases) ("Plaintiffs are entitled to recover the *expenses* incurred in making service but not . . . their legal fees incurred in obtaining service.") (quotations omitted); *see also Rick's Cabaret Int'l, Inc. v. Indem. Ins. Corp.*, No. 11-CV-3716, 2012 WL 208606, at *5 (S.D. Tex. Jan. 24, 2012) ("Unlike Rule 4(d)(2)(B), which provides for the recovery of 'reasonable expenses, including attorney's fees,' Rule 4(d)(2)(A) provides only for the recovery of expenses. As a result, Plaintiffs are not entitled to recover the $1,658.00 in legal fees for services rendered to perfect service on IIC.").

Therefore, Plaintiff's motion for service costs and associated attorney's fees should be denied without prejudice.

## IV. CONCLUSION

The Court recommends NCBR's motion to compel arbitration (ECF No. 16) be **DENIED** and Plaintiff's motion for service costs (ECF No. 27) be **DENIED WITHOUT PREJUDICE**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R.**

CIV. P. 72(b). **Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on October 30, 2019.

_____
**Dena Hanovice Palermo
United States Magistrate Judge**